CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/12/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNHCBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 6:20-cv-00055 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| ERIN ROSE VALKO DESANTIS, *et al.*, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

The Government seeks to enforce its criminal restitution judgment on Defendant's residence. Finding that the property is not exempt, the Court will grant the Government's motion.

**Undisputed Facts**

In 2008, Defendant Erin Rose Valko DeSantis pleaded guilty in the United States District Court for the Southern District of Florida to one count of Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. § 371. Dkt. 1 ¶ 10 (complaint). The district court sentenced Defendant to a three-year term of probation and ordered her to pay a $100 special assessment and an unspecified amount of restitution to her victims. *Id.* ¶ 11; *See* Dkt. 1-1 (judgment). Soon after sentencing, the court issued an order amending the judgment, which specified that Defendant had to pay $4,687,073.00, plus interest, in restitution. Dkt. 1-2 ("restitution judgment"). Defendant did not appeal. Dkt. 16 at 2.

The day after the court issued its restitution judgment, Defendant filed a notice informing the Court that she had sold her home in Florida and purchased a home in Lexington, Virginia,

using the entirety of her equity in the Florida home. Dkt. 1 ¶ 13; Dkt. 11 ¶ 13 (answer). The notice states, in relevant part:

> Defendant has a sale for her home at 82 S. Sewals Point Road and has purchased a home in Lexington, Virginia. The funds from the sale of the Sewals Point home will be used to purchase the Lexington, Virginia home in a simultaneous closing to occur in approximately sixty (60) days . . . Defendant, through counsel, is providing this Notice since issues of restitution are still under consideration and while the undersigned believes the home has been exempted from restitution due to its removal from forfeiture, Notice is given in what is in essence a transfer of tangible assets . . . [T]o assure that Ms. Desantis fully intends to comply with all conditions of her probation, the home will be titled solely in her name.

Dkt. 1-3.

Defendant closed on the Lexington home purchase in June 2009.[1] Dkt. 1 ¶ 14. The Government recorded a "Notice of Lien for Fine and/or Restitution" in Rockbridge County on the Lexington home in August 2009. *Id.* ¶ 15.

In November 2009, Defendant conveyed the Lexington home via a deed of gift to herself, Tara L. Dean, and Jason T. Dean as joint tenants with survivorship. Dkt. 1-5 (first deed of gift). The deed of gift was executed in January 2010. *Id.* That month, Defendant also created a revocable trust. Dkt. 1-6 (revocable trust). She executed the trust documents in March 2010. *Id.* Defendant is the trustee, settlor, and beneficiary of the trust and has complete control over the trust. *Id.*

In March 2010, Defendant also executed a second deed of gift, conveying the Lexington home from the three joint tenants to her newly created revocable trust. Dkt. 1 ¶¶ 19–20; *see* Dkt. 1-7 (second deed of gift).[2] The Government recorded a second lien in Rockbridge County against

---

[1] The home's address was originally 501 Turkey Hill Lane, but the City of Lexington changed it in 2014 to 255 Thirsty Dog Lane. Dkt. 1 ¶ 24.

[2] Not at issue, but worth noting, is the fact that Defendant executed and recorded two credit line deeds of trust in mid-2012. The first in the amount of $100,000 in favor of her husband, and the second in the amount of $75,000 in favor of a family member. Dkt. 1 ¶¶ 21–22.

Defendant's trust, as nominee for Defendant, in April 2019. Dkt. 1-10.

The Government brings this action to enforce the judgment lien against Defendant. Specifically, the Government asks the Court to determine the priority of all claims to, and liens upon, the Lexington property. Dkt. 1 at 6. The Government also requests that the Court order the United States' judgment lien be foreclosed on the subject property, and that the net proceeds of the sale be distributed in a priority determined by the Court.

## Standard of Review

A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is made after pleadings are closed, "but early enough not to delay trial." A motion for judgment on the pleadings should be granted when the movant has clearly established that no material issue of fact remains, and the movant is entitled to judgment as a matter of law. *Deutsche Bank Nat'l Trust Co. v. Fegely*, 767 F. App'x 582, 583 (4th Cir. 2019). The standard for Rule 12(c) motions is the same as for motions made pursuant to Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012). It accepts all facts pled by the nonmoving party as true and draws all reasonable inferences in the nonmoving party's favor. *Fegely*, 767 F. App'x at 583. Documents attached to the pleadings may be considered on a motion for judgment on the pleadings so long as they are "integral to the complaint and authentic." *Hartford Cas. Ins. Co. v. Davis & Gelshenen LLP*, 801 F. App'x 915, 916 (4th Cir. 2020).

## Analysis

The Government argues that there are no material issues of fact and that, as a matter of law, it is entitled to foreclose on the home. Dkt. 22 at 1. Defendant opposes the motion on the

pleadings and contends that there are material issues of fact regarding (1) the terms of the restitution judgment, and (2) the Government's "position in the underlying criminal case."[3] Dkt. 19 ¶¶ 13–14.

### A. The Government's Ability to Enforce Restitution Judgments

The statutory scheme permitting the Government to enforce restitution judgments is robust. Section 3613(c) states that an order of restitution under certain federal statutes creates "a lien in favor of the United States on all property" of that person, just as if the government held a tax lien on the person's property. "The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated under subsection (b)." *Id.* In addition, § 3613(a)(1) states that the government may enforce a judgment imposing a fine or restitution order "against all property or rights to property of the person fined," with other exceptions delineated in 26 U.S.C. § 6334 (such as items of clothing, certain annuity and pension payments, and a set amount of personal effects). Finally, § 3613(d) states that judgment liens are effective upon notice.

Under 18 U.S.C. § 3613(d), a lien is perfected as against certain third parties by the filing of a notice of lien in the manner in which a tax lien is filed. Here, it is undisputed that the Government filed a "Notice of Lien for Fine and/or Restitution" on the Lexington home in

---

[3] Defendant's answer asserts two other affirmative defenses. Specifically, (1) that the underlying judgment ordering restitution violates 18 U.S.C. § 3663(c)(2)(B), and (2) that any foreclosure would result in unjust economic hardship for Defendant and her children. Dkt. 11 ¶¶ 36–39, 41. Both can be dispelled quickly. Under 18 U.S.C. § 3663, the amount of restitution is capped at the maximum fine permitted for the offense. 18 U.S.C. § 3663(c)(2)(B). For Defendant's offense—conspiracy to commit wire fraud—the maximum fine is twice the gross gain or twice the gross loss. 18 U.S.C. § 3571(d). The sentencing court determined that Defendant's victims suffered a gross loss of $4.67 million. Therefore, the restitution amount of $4.67 million is permissible and within limits. As to Defendant's second contention, although forfeiture may create issues in terms of finding a new home for her family, she provides no statute or court case that supports the argument that the Court should deny the Government's motion solely due to economic hardship.

Rockbridge County in August 2009, Dkt. 1 ¶ 15, in the amount of $4.687 million. The Government perfected its lien as to third parties when it recorded its lien notice with Rockbridge County on August 24, 2009. Dkt. 16 at 5. Because each of the requirements to perfect a lien are met, the Government has a valid judgment lien against Defendant's property. Thus, there is no material issue of fact as to whether the Government has a valid and perfected lien against Defendant's Lexington home.

      B.      The Terms of the Restitution Judgment

Defendant asserts that she is not in default of the restitution judgment because the judgment only obligated her to "pay restitution at the rate of 10% of monthly gross earnings," which she did through 2012. Dkt. 19 ¶ 13. Once she stopped working, the payments ended because she received no "gross earnings" to satisfy the 10% monthly restitution rate. *Id.* Now that she is not working, she asks the Court to rule that she no longer has to pay restitution. Defendant argues that whether she is in compliance with the restitution judgment is a factual matter for trial. *Id.*

Defendant also argues that "the Government took the position in the underlying criminal case that the '[Lexington] home has been exempted from restitution due to its removal from forfeiture.'" *Id.* ¶ 14. In her answer, Defendant avers that the Government, "through its Assistant U.S. Attorney Jeffery Kay, addressed this issue on the record in open court during the April 24, 2009, hearing." Dkt. 11 ¶ 18. A week later, Defendant sold her home at Sewals Point, using $500,000 from the sale as a lump sum payment toward restitution, and the rest to purchase the Lexington home. Dkt. 19 ¶ 14. The Government did not object to her notice of sale, which included the statement, "while [Defendant] believes *the home has been exempted from restitution* due to its removal from forfeiture, Notice is given in what is in essence a transfer of tangible asset." Dkt. 11-4. Because there was no objection, Defendant argues that she thought she could keep the balance

of the sale to "re-start her life." *Id.* Defendant's answer also asserts that the court record "suggests that the parties agreed the home—as a primary residence—would be exempt from restitution." Dkt. 11 ¶ 33.

The Court's unambiguous judgment, not the defendant's belief, is controlling. The written restitution judgment is clear, and the Defendant does not claim that the presiding judge made any oral pronouncement at her restitution hearing contrary to it.

The restitution judgment unequivocally states that "restitution is due and payable immediately." Dkt. 1-2 at 1. It also provides that Defendant "*shall* pay restitution in the amount of $4,687,073.00 . . . ." *Id.* In fact, the judgment states that "payments do not preclude the government from using other assets or income to satisfy the restitution obligations." *Id.* at 1–2; Dkt. 1-1 at 5. Nothing in the order (1) limits the Government's ability to collect restitution only when Defendant is employed, or (2) declares Defendant's primary residence exempt from her restitution obligation. Dkt. 1-2 Defendant's argument that she is not in default of her restitution obligation, simply because she no longer receives a paycheck, is unpersuasive. Such an understanding creates an illogical result and perverse incentives, whereby defendants could avoid restitution payments by choosing not to work. This flies in the face of the Mandatory Victims Restitution Act, 18 U.S.C. §§ 3663A-64, which is the basis for her restitution obligation.

Also unpersuasive is Defendant's assertion that she is not subject to foreclosure because the U.S. Attorney gave her a "belief and understanding" to that effect. Dkt. 11 ¶¶ 18–19. Even assuming the Assistant U.S. Attorney told Defendant that her home would be exempted, at no point does Defendant allege that the sentencing judge adopted the Assistant U.S. Attorney's position or took the affirmative step to exempt Defendant's primary residence from restitution obligations. Nor is Defendant's belief that the home is exempted because it was removed from

forfeiture legally justified. Removal from forfeiture does not exempt property from a restitution judgment.

The words of the restitution judgment are unambiguous. No material issue of fact exists as to whether the Lexington home is exempt from Defendant's restitution obligations. Accordingly, the Court will grant the Government's motion on the pleadings, Dkt. 15. An accompanying Order will follow.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to Defendant and all counsel of record.

Entered this  12th   day of August, 2021.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE